On Return to Remand
*

WELCH, Presiding Judge.
Charlie Stith appeals from the circuit court’s summary dismissal of what appears to be his first Rule 32, Ala. R.Crim. P., petition for postconviction relief challenging his October 10, 2008, guilty plea and *287 concomitant conviction for first-degree sodomy, a violation of § 13A-6-63, Ala. Code 1975, which is a Class A felony, and his sentence of imprisonment for 10 years. Stith did not file a direct appeal. Stith’s Rule 32 petition was deemed filed on September 14, 2009.
In his petition, Stith claimed that his trial counsel was ineffective in rendering advice regarding the collateral effects of a guilty plea in the following respects:
(A) Stith’s counsel failed to inform him that he would not be eligible for “good time” with regard to his prison sentence because first-degree sodomy is a Class A felony and Ala.Code 1975, § 14-9-41, provides that offenders convicted of a Class A felony are not eligible for correctional incentive time (“good time”).
(B) Stith’s counsel failed to advise Stith that an offer from the State to plead guilty to first-degree sodomy, a Class A felony, wherein Stith would receive a 20-year prison sentence, split to serve 5 years, would result in Stith’s serving less time in prison than under a “straight” 10-year sentence, because good time could not be earned for a Class A felony. Specifically, Stith alleged that, “if [Stith] would have really understood that when he plead[ed] guilty ... he was going to prison for ten (10) years without good time and/or parole[, Stith] would not have agreed to plead guilty.” (C. 12.)
(C) Stith’s counsel allowed Stith to plead guilty when Stith’s competence was questionable and Stith’s counsel was concerned about Stith’s “rage” issues. (C. 9-12.) This claim was not pursued in his brief on appeal; therefore, it is deemed abandoned and will not be considered. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995).
The circuit court denied the petition, stating on the case-action summary: “PETITION DENIED SEE STATE’S RESPONSE.” (C. 3.)
We determined that the allegations in Stith’s petition could be meritorious, see Patterson v. State, 879 So.2d 1208, 1210 (Ala.Crim.App.2003), and Holt v. State, 905 So.2d 857, 858 (Ala.Crim.App.2004), and remanded this case to the circuit court for that court to make specific, written findings of fact concerning Stith’s ineffeetive-assistance-of-counsel allegations. The circuit court has complied with our remand order, so we proceed to address the merits of Stith’s appeal.
To prevail on a claim of ineffective assistance of counsel, a petitioner must ultimately prove that counsel’s performance was deficient and that the deficient performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of the guilty-plea process, we have held:
“When an appellant’s claim of ineffective assistance of counsel arises from alleged errors committed by counsel in the guilty plea process, the prejudice prong of the Strickland analysis is satisfied by the appellant’s establishing ‘that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.’ ”
Culver v. State, 549 So.2d 568, 572 (Ala.Crim.App.1989), quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
In his postconviction petition, Stith asserted that, but for the erroneous advice of counsel, he would not have pleaded guilty in order to receive a 10-year sentence.
Section 14-9-41, Ala.Code 1975, entitled “Computation of incentive time deductions,” provides in pertinent part:
“(a) Each prisoner who shall hereafter be convicted of any offense against *288 the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this article may be entitled to earn a deduction from the term of his sentence as follows:
“(e) Provided, however, no person may receive the benefits of correctional incentive time if he or she has been convicted of a Class A felony or has been sentenced to life, or death, or who has received a sentence for more than 15 years in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may receive the benefits of correctional incentive time if he or she has been convicted of a criminal sex offense involving a child as defined in Section 15 — 20—21 (5)[, Ala.Code 1975]. No person may be placed in Class I if he or she has been convicted of an assault where the victims of such assault suffered the permanent loss or use or permanent partial loss or use of any bodily organ or appendage. No person may be placed in Class I if he or she has been convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of 17 years.
“The court sentencing a person shall note upon the transcript to accompany such prisoner the fact that he or she has been sentenced as a result of a crime that forbids his or her being classified as a Class I prisoner.”
(Emphasis supplied.)
The affidavit of trial counsel stated:
“11. On October 10, 2008, Mr. Stith was again before the Court and the District Attorney made a plea offer of 20 years split to serve 5 years. As Mr. Stith’s attorney I had a duty and obligation to make him aware of the plea agreement offer.
“12. Upon advising Mr. Stith of the offer of 20 years split to serve 5 years, he declined but stated that he would enter into a plea agreement for 10 years because with that sentence he would be entitled to ‘good’ time. The ramifications of entering into the plea were explained in detail to him.
“13. The District Attorney was made aware of Mr. Stith’s decision to enter a plea for a recommended sentence of 10 years and the District Attorney accepted the plea offer. On October 10, 2008, Mr. Stith entered a plea of guilty to the charge of Sodomy 1st and the prosecutor recommended a sentence of 10 years.
“14. At no time was Mr. Stith told by me that he would receive good time although he did ask me about good time. I told him, as I tell each and every defendant, that I cannot and do not calculate or attempt to advise clients regarding the State’s rules and regulations pertaining to an inmate earning good-time. In fact, I carefully made sure that he understood that no one, except for the DepaHment of Corrections, calculate [sic] or make a determination regarding good time credit to be applied against a sentence that had been imposed.”
(SR. 13-14.)[1] (Emphasis added.)
The circuit court reviewed the affidavit of trial counsel and found:
*289 “After review of [Stith’s] claims and the affidavit of trial counsel attached; the Court makes the following findings of fact:
“1. [Stith] entered a guilty plea to first-degree sodomy on October 10, 2009.
“2. [Stith] agreed to a straight ten-year sentence after rejecting a twenty split five sentence which was offered by the District Attorney.
“3. [Stith] was represented by one of the Circuit’s most experienced and well qualified attorneys....
“4. [Stith] was advised as to the possible range of sentence for a Class A felony.
“5. [Stith] acknowledged on the record that he understood his constitutional rights and that he understandingly and voluntarily pleaded guilty and waived his rights.
“6. Trial Counsel fully advised [Stith] as to his rights and choices. “7. At no time did Trial Counsel advise [Stith] that be would receive ‘good time.’
“This Court finds that no material issue of law or fact exists that would entitle [Stith] to relief under Rule 32, and that no purpose would be served by any further proceedings.
“[Stith’s] petition is without merit.
“The petition is DENIED.”
(S.R. 11-12.)
In Fearson v. State, 662 So.2d 1225 (Ala.Crim.App.1995), this court held that it was not incumbent upon the trial court to explain to the defendant, who intended to plead guilty, that, as a Class A felon, he would be ineligible to earn correctional incentive time (“CIT”), also referred to as good time.
“Fearson asserts on appeal that his pleas were not intelligent, knowing, and voluntary because, he says, neither his attorney nor the trial court advised him that, because first degree robbery is a Class A felony, he would be ineligible to earn correctional incentive time (‘CIT’) under Code of Alabama 1975, § 14-9-41(e). Fearson presented this issue in a motion to withdraw his guilty pleas, which was denied by operation of law. This issue does not involve any misrepresentation or erroneous advice allegedly inducing the defendant into pleading guilty.
“ ‘An accused is entitled to information concerning the direct consequences of his plea. He is not entitled to information concerning all collateral effects, or future contingencies that might arise.’ Minnifield v. State, 439 So.2d 190, 192 (Ala.Cr.App.1983). We do not consider that ineligibility to earn CIT is a direct consequence of a guilty plea as to which a defendant must be advised before entering a plea. See Johnson v. Puckett, 930 F.2d 445, 448 n. 2 (5th Cir.), cert. denied, 502 U.S. 890, 112 S.Ct. 252, 116 L.Ed.2d 206 (1991) (the court noted that the effect of a defendant’s guilty plea on good time credits is a collateral consequence of which the defendant need not be advised); Johnson v. Dees, 581 F.2d 1166, 1167 (5th Cir.1978) (the court held that the trial court’s failure to inform the defendant that he could be denied good time credits as a serious multiple offender did not preclude the entry of a voluntary and intelligent plea because such matter is a collateral consequence).
“ ‘The mere hope, subjective belief, or expectation of a defendant regarding length of sentence, parole, conditions of confinement, and other similar matters which are not based upon a promise by the state are insufficient to warrant the [setting aside of a plea of guilt.] State v. Holman, 486 So.2d *290 500 (Ala.1986); Tiner v. State, 421 So.2d 1369 (Ala.Cr.App.1982). The same is true where the defendant claims that his hope and expectation is based upon consultation with his counsel. Norman v. McCotter, 765 F.2d 504 (5th Cir.1985); Johnson v. Lockhart, 746 F.2d 1367 (8th Cir.1984) (wherein the defendant was not allowed to withdraw guilty plea even though his counsel misinformed him about his parole eligibility, when there was no evidence that counsel promised defendant that he would be paroled); Greathouse v. United States, 548 F.2d 225 (8th Cir.1977), cert. denied, 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1977) (wherein the defendant was not allowed to withdraw his guilty plea even though his counsel incorrectly informed him that, if he pleaded guilty, the federal court could order his state and federal sentences to run concurrently).’
“Culver v. State, 549 So.2d 568, 571 (Ala.Cr.App.1989). See also Oyekoya v. State, 558 So.2d 990, 990 (Ala.Cr.App.1989) (quoting United States v. Campbell, 778 F.2d 764, 768 (11th Cir.1985)) (‘counsel’s failure to advise the defendant of the collateral consequences of a guilty plea ... cannot rise to the level of constitutionally ineffective assistance’).”
Fearson v. State, 662 So.2d at 1226.
In Fearson we noted that a Class A felon’s ineligibility to earn CIT was a collateral consequence to a guilty plea.
In Patterson v. State, 879 So.2d 1208 (Ala.Crim.App.2003), we characterized counsel’s failure in Fearson to advise Fearson that a Class A felon could not accrue CIT as an omission and not as an active misrepresentation. We held that a misrepresentation, as opposed to an omission, i.e., a failure to advise, regarding a collateral consequence, would entitle Patterson to relief, and, thus, we remanded the case to the circuit court for further proceedings.
“As the State correctly notes in its brief on appeal, counsel’s failure to advise a defendant that he was ‘not’ eligible to earn IGT [correctional incentive time] credit while he was incarcerated does not constitute ineffective assistance of counsel nor does it render a guilty plea involuntary. Fearson v. State, 662 So.2d 1225 (Ala.Crim.App.1995). Moreover, the Court found that Patterson was advised of the correct sentencing range for the crime of first-degree burglary before he entered his guilty plea. Accordingly, he is not entitled to relief on his claim that his guilty plea was not knowingly and voluntarily entered.
“However, Patterson contends that trial counsel told him that he would receive IGT credit if he pleaded guilty to this offense. It is unclear from the record whether counsel did in fact so misinform Patterson regarding his eligibility for IGT credit. This Court must remand this matter to the circuit court for a determination as to this issue, and the State has requested that we do so.”
879 So.2d at 1210.
Since Fearson was decided, the United States Supreme Court in Padilla v. Kentucky, 559 U.S. -, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), has narrowed the distinction between a collateral consequence and a direct consequence when reviewing counsel’s performance, holding that when an alien was not advised that a felony conviction could result in his being deported, the collateral consequence of pleading guilty — i.e., possible deportation — was so severe that the failure or omission to advise the defendant pleading guilty about the consequence was ineffective assistance of counsel.
*291 “Before deciding whether to plead guilty, a defendant is entitled to ‘the effective assistance of competent counsel.’ McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 768 (1970); Strickland v. Washington, 466 U.S. [668], at 686, 104 S.Ct. 2052 [ (1984) ]. The Supreme Court of Kentucky rejected Padilla’s ineffectiveness claim on the ground that the advice he sought about the risk of deportation concerned only collateral matters, ie., those matters not within the sentencing au-_ thority of the state trial court. [Commonwealth of Kentucky v. Padilla,] 258 S.W.3d [482], at 483-484 [(Ky.2008)] (citing Commonwealth v. Fuartado, 170 S.W.3d 384 (2005)). In its view, ‘collateral consequences are outside the scope of representation required by the Sixth Amendment,’ and, therefore, the ‘failure of defense counsel to advise the defendant of possible deportation consequences is not cognizable as a claim for ineffective assistance of counsel.’ 253 S.W.3d, at 483. The Kentucky high court is far from alone in this view.
“We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally ‘reasonable professional assistance’ required under Strickland, 466 U.S., at 689, 104 S.Ct. 2052. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.”
Padilla v. Kentucky, 559 U.S. at -, 130 S.Ct. at 1481 (footnotes omitted).
In Ex parte Coleman, 71 So.3d 627 (Ala.2010), the Alabama Supreme Court held that a Rule 32 petitioner stated a claim sufficient to require an evidentiary hearing when the petitioner was misinformed about his eligibility for work release and parole.
“Coleman contends that his decision to plead guilty to the four offenses ‘was based solely upon counsel’s representations of parole and work-release eligibility’ and that, had he known that he was actually ineligible for parole and work release because of the nature of the offenses, he would not have pleaded guilty but, instead, ‘would have insisted on proceeding to trial.’ Coleman’s brief, p. 10....
“Coleman has alleged facts that, if true, would entitle him to relief. As noted, Coleman alleged in the Rule 32 petition that, but for his attorney’s misrepresentations concerning Coleman’s eligibility for parole and work release, he would not have pleaded guilty but, instead, would have insisted on going to trial. See Winbush [v. State, 18 So.3d 423 (Ala.Crim.App.2009) ] (citing Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)). Furthermore, in his affidavit, Coleman alleged ‘special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.’ See Hill, 474 U.S. at 60. Specifically, Coleman alleged that he had no reason to plead guilty to a 20-year sentence without the possibility of parole or work release because, Coleman said, ‘at my age of 63, a 20 year sentence is a life sentence.’ Therefore, if the allegations of Coleman’s petition are taken as true, Coleman placed ‘particular emphasis’ on his attorney’s statements regarding his eligibility for parole and work release in deciding to accept the plea agreement.”
Ex parte Coleman, 71 So.3d at 632-33 (emphasis added).
Likewise, in Winbush v. State, 18 So.3d 423, 423-24 (Ala.Crim.App.2009), Winbush asserted in a postconviction petition that *292 bis counsel was ineffective because counsel had erroneously informed him that if he pleaded guilty he would receive “good-time credit.” Winbush alleged that as a result of the information provided by his counsel, he pleaded guilty. We held that counsel’s erroneous advice regarding Winbush’s eligibility for good-time credit was a viable basis for a claim of ineffective assistance of counsel. The case was remanded for a determination on the truth of the claim.
In this case, Stith was presented with a plea agreement that provided that if he pleaded guilty he would receive a 20-year sentence, split to serve 5 years, day for day. He rejected that agreement and requested that his counsel negotiate a different plea agreement that provided that if he pleaded guilty he would receive a 10-year “straight” sentence, telling counsel that his reason for doing so was that he would earn good time (i.e., CIT), and, thus, presumptively, serve less than 5 years in prison. It is clear that Stith placed “particular emphasis” on his eligibility to earn CIT in deciding whether or not to plead guilty.
Stith’s counsel did not advise him that good time (i.e., CIT) was not available for a Class A felony. However, a simple reading of the applicable statute, § 14-íMl, Ala.Code 1975, would have informed counsel that incentive time deductions are not available for an inmate convicted of a Class A felony. Counsel asserted in his affidavit:
“In fact, I carefully made sure that he understood that no one, except for the Department of Corrections, calculate [sic] or make a determination regarding good time credit to be applied against a sentence that had been imposed.”
(SR. 14.)
Although counsel was apparently unaware of the legal effect of § 14-9-41, Ala.Code 1975, and did not represent to Stith that he could earn CIT, the advice given to Stith was incorrect and amounted to a misrepresentation regarding the law. Merely reading the statute would have enabled counsel to properly advise Stith that he could not receive incentive time deductions for a Class A felony. It is axiomatic that the reason why counsel is appointed is to advise a client about the law. The effect of a sentence is one of the most important matters about which a criminal-defense lawyer should be cognizant. “[E]very lawyer engaged in defending criminal cases knows that often a finding of guilt is a foregone conclusion, and that the real issue centers about the severity of the punishment.” Smith v. United States, 223 F.2d 750, 754 (5th Cir.1955). The fact that Stith, being ignorant of the law, instigated a renegotiation of his plea that effectively doubled the duration of his imprisonment is not a factor that prevents him from pleading or prevailing on a claim of ineffective assistance of counsel.
Whether denominated as an omission or a misrepresentation, counsel failed to advise Stith that if he accepted the plea agreement that called for a 10-year straight sentence the result would be that Stith would have to serve the full 10 years’ imprisonment. Stith’s counsel did not provide effective assistance of counsel when he incorrectly advised Stith that “no one, except for the Department of Corrections, [may] calculate or make a determination regarding good time credit.” Stith was allowed to make a decision that added 5 years to the amount of time he would serve due to counsel’s failure to advise him that good time credit (i.e., CIT) was not available.
It is true that the Department of Corrections calculates deductions from sentences pursuant to their regulations (some of which are restricted and unavailable to the public, e.g., Regulation 427, Alabama Department of Corrections). Those calculations are based on, among other consid *293 erations, how a classification official views the circumstances of the offense and an inmate’s prior criminal history. To some extent those determinations cannot be accurately predicted. Therefore, counsel is not required to advise every defendant pleading guilty regarding the incentive time deductions available for a sentence offered pursuant to a plea agreement. However, when a defendant has expressed to his or her counsel that the availability of good-time or incentive credit is a substantial material factor, i.e., the defendant places “particular emphasis” on the availability of CIT in his or her decision to accept or reject a plea agreement, counsel must correctly advise the defendant of any statutory prohibitions that exist that would prevent the defendant from earning CIT deductions. Failure to do so was, in the particular circumstances presented in this case, ineffective assistance of counsel.
Thus, Stith proved that his counsel was ineffective and that he was prejudiced as a result, because he would not have pleaded guilty relying on a plea agreement that provided for a 10-year straight sentence. For the foregoing reasons, we reverse the judgment of the circuit court and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, KELLUM, and JOINER, JJ., concur. BURKE, J., concurs in the result.

 Note from the reporter of decisions: On July 15, 2010, the Court of Criminal Appeals remanded this case by order.

. The supplemental record furnished on return to remand is designated as S.R.